[Crim. No. 4257. Second Dist., Div. Three. Dec. 31, 1948.]

THE PEOPLE, Respondent, v. WILLIAM H. BAKER et al., Appellants.

Michael Novak, in pro. per:, and Morris Lavine for Appellants.

Fred N. Howser, Attorney General, and Dan Kaufman, Deputy Attorney General, for Respondent.

WOOD, J.—Defendants Baker and Novak were convicted, in a jury trial, of robbery in the first degree. Each defendant admitted the allegations of the information that he had been twice convicted of felonies. Each one appeals from the judgment against him and from the order denying his motion for a new trial. Defendant Novak has not filed a brief. Defendant Baker will be referred to as the appellant.

Appellant contends that the court erred in permitting the preliminary-examination testimony of an accomplice, who was not present at the trial, to be read into evidence; and that the court erred in refusing to give certain instructions.

On May 2, 1947, about 1 p. m., while one Littel, who was the manager of a check-cashing business in Los Angeles, was walking from a bank toward his place of business, carrying a sack containing $9,005 which he had just withdrawn from the bank, two men put guns against his body and told him to give the money to them and to get into an automobile which was near by. One of the men took the sack of money and threw it into the automobile, and while the other one was pushing Mr. Littel toward the automobile Mr. Littel ran away. The two men then got into the automobile, and it was immediately driven away by a third man.

An alibi was asserted as a defense by each defendant. Baker asserted that he was at a café, as a patron, on May 2, 1947, from 12:30 p. m. until about 5 p. m. His wife and three other persons corroborated his testimony. Novak asserted that he was working as a bartender at the time of the robbery. Three witnesses corroborated his testimony.

At the preliminary examination on November 18, 1947, one McLeod testified that he was with the defendants Baker and Novak on May 2, 1947, and that as Mr. Littel came from the bank on that day they held him up—Novak put a gun on him, and Baker took the money, and McLeod was in the automobile. He also testified that the three of them had been watching the check-cashing place, and planning the robbery, for three weeks; that he had been twice convicted of felonies; and that he had been offered immunity from prosecution by the deputy district attorney.

At the trial, and also at the police station prior thereto, Mr. Littel identified the two defendants as the men who robbed him. It did appear, however, that soon after the robbery the officers showed him a group of pictures of persons, which included a picture of Baker, and he did not identify him as one of the robbers.

McLeod was not present at the trial, and the court, over the objection of the defendants, permitted his testimony which had been given at the preliminary examination to be read. Appellant's contention that the court erred in receiving that testimony is not sustained. Regarding the foundation for the introduction of the testimony, the evidence showed that McLeod told a police officer, immediately after the preliminary examination, that if he remained in Los Angeles Baker would have him killed before the trial and that he would be safe only in Canada; that the officer told him there would be no objection if he went to Vancouver if he would make himself available for the trial; that McLeod told his wife, on the day after the preliminary examination, that he was going to Canada; and that his wife had not seen him since that date, but she had received two letters from him—one bearing a postmark "San Francisco" and the other a postmark "Seattle." The letter from San Francisco was dated about two days after the preliminary examination, and the other one was dated about 12 days thereafter. A process server, employed by the district attorney and assigned to the superior court, received the subpoena for McLeod about seven weeks before the trial, and he devoted about 100 hours in attempting to locate him. He went to the former residence of McLeod and was informed by McLeod's wife that he had left that place some months ago. The process server "checked" the post office, five hospitals in Los Angeles, a hospital in Long Beach, a hospital in Corona, the jails in Los Angeles, many hotels in

Los Angeles, the State Board of Accountancy (McLeod having testified that he was an accountant), four banks, and 12 check-cashing places in Los Angeles. He also "checked practically every" hotel "from Las Vegas to San Francisco, San Diego and Catalina Island." He checked various hotels in Santa Barbara, Palm Springs and Whittier. He checked motor and trailer courts. He also checked the name "McLeod" in the register of voters and in the telephone book. A police officer made inquiries concerning McLeod at his former residence about 12 times. The officer also went to Vancouver, Canada, about three weeks before the trial and looked for McLeod. McLeod's wife testified regarding his statement, above mentioned, that he was going to Canada, and also regarding the letters, above mentioned, which she received from him. McLeod was not found.

 Appellant concedes that a diligent search was made in Los Angeles County, but he argues that a showing should have been made that a diligent search was made in all the counties of the state. The evidence does show, as above indicated, that a search was made in various counties of the state east and south of San Francisco. Some of the evidence, namely, the statements by McLeod that he was going to Canada and his letter from Seattle, indicates that he was not within the state. Under such circumstance, it cannot be said properly that a search should have been made in all the counties. Section 686 of the Penal Code provides that: "In a criminal action . . . where the charge has been preliminarily examined . . . and the testimony taken down . . . in the presence of the defendant, who has . . . cross-examined or had an opportunity to cross-examine the witness . . . the deposition of such witness may be read, upon its being satisfactorily shown to the court that he . . . cannot with due diligence be found within the state. . . ." In the present case, the examination of, and the opportunity to cross-examine, McLeod satisfied that statutory requirement. The question whether due diligence has been shown in attempting to secure the appearance of a witness who has testified at a preliminary examination is addressed to the sound discretion of the trial judge. (*People* v. *Dunn,* 29 Cal.2d 654, 660-661 [177 P.2d 553].) "The decision of a trial judge on the question of diligence and of the propriety of receiving or rejecting the evidence will not be disturbed on appeal unless it appears that there was an abuse of discretion. [Citing cases.] The problem is primarily for the trial court, and its solution

will not be disturbed if there is evidence of substantial character to support its conclusion.'' (*People* v. *Cavazos,* 25 Cal.2d 198, 201 [153 P.2d 177].) The trial judge, who had presided many years in a criminal department of the Superior Court of Los Angeles County, stated, in referring to the attempt to serve McLeod, that the process server ''did perhaps the most thorough, complete job of attempting to serve somebody, that I have ever encountered.'' He also said, ''there is another situation here that makes the matter very much easier for decision, and that is through the testimony of Mrs. McLeod and some other testimony indicating the intent of the witness to leave the State and the reason for it.'' The court did not err in permitting the testimony of McLeod to be read.

▆ Appellant contends also that the court erred in refusing to give appellant's requested instruction number 6, which is as follows: ''You are instructed that no testimony may be accepted by you as corroborative testimony of an accomplice unless you shall be convinced beyond a reasonable doubt of the truth of such corroborating testimony.'' He argues that the testimony of an accomplice cannot be corroborated by an untruth, and that if a reasonable doubt exists as to the truthfulness of the corroborative testimony there is no corroboration. The court did not err in refusing to give that instruction. The provision of section 1111 of the Penal Code that the corroborating evidence ''shall tend to connect the defendant with the commission of the offense'' does not mean that such evidence shall so connect the defendant beyond a reasonable doubt. (*People* v. *Collier,* 111 Cal.App. 215, 229 [295 P. 898].) In the case of *People* v. *Looney,* 9 Cal.App.2d 335 [49 P.2d 889], the court said, at page 337, that the defendant contends ''that the trial court erred in failing to instruct the jury that his connection with the crime must be established beyond a reasonable doubt by evidence other than the testimony of accomplices. This is not the law. While more is required by way of corroboration than to raise a mere suspicion, it is only necessary that the corroborative evidence *tend* to connect the defendant with the commission of the offense.'' Appellant's requested instruction is not a correct statement of the law.

▆ Appellant contends also that the court erred in refusing to give appellant's requested instruction (unnumbered) which is as follows: ''The mere fact, if it be a fact, that testimony has been corroborated does not mean that you are

required to accept it as true. Your duty is to weigh such evidence as you do all other and to require that all the evidence, considered together, carry the convincing force required by law before you find the defendant guilty of the charge against him.'' Appellant argues that said instruction, requested by him, was necessary by reason of the fact that the court, at the request of the prosecution, gave the following instruction: ''In determining whether or not the testimony of an accomplice has been corroborated as required by law, you must, for the purpose only of your consideration of that question, assume to be removed from the case the testimony of the accomplice, and then examine all other evidence with a view to determining if there be any inculpatory evidence, that is, evidence tending to connect the defendant with the commission of the offense. If such other evidence does do that, then the testimony of the accomplice is corroborated; if it does not, then there is no corroboration, although the accomplice may be corroborated in regard to any number of facts sworn to by him.'' The court did not err in refusing to give the instruction requested by appellant. It was covered by other instructions which were given. Proper instructions as to accomplices, corroboration, reasonable doubt, and credibility of witnesses, were given. If the jury, in applying the test to determine. corroboration as instructed by the court, disbelieved the testimony of Mr. Littel that the defendants were the ones who robbed him, there would be no corroborating testimony, and then under the instructions of the court the jurors should not consider McLeod's testimony. It is clear that the jury was instructed that it was not required to accept the testimony of McLeod even if it found that his testimony had been corroborated. McLeod had testified that he had been twice convicted of felonies. The court had instructed the jury that a witness may be impeached by proof that he has been convicted of a felony. Irrespective of the testimony of McLeod, Mr. Littel identified the defendants as the men who robbed him.

The judgments, and the orders denying the motions for a new trial, are affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant Baker's petition for a hearing by the Supreme Court was denied January 27, 1949. Carter, J., voted for a hearing.